# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| JESSICA JONES, MICHELLE VELOTTA, and CHRISTINA LORENZEN on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> VARSITY BRANDS, LLC, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> )    No. 2:20-cv-02892-SHL-cgc <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER DENYING DEFENDANTS BAIN CAPITAL PRIVATE EQUITY, LP AND CHARLESBANK CAPITAL PARTNERS, LLC'S MOTION TO DISMISS

Before the Court are Defendants Bain Capital Private Equity, LP ("Bain") and Charlesbank Capital Partners, LLC's ("Charlesbank") (together, "Holding Company Defendants") Motion to Dismiss, (ECF No. 60), Plaintiffs' Response, (ECF No. 67), and the Holding Company Defendants' Reply. (ECF No. 72.)

In their Motion, the Holding Company Defendants contend that Plaintiffs insufficiently allege their involvement in any conduct made unlawful by the Sherman Act, and that the allegations forming the crux of Plaintiffs' cause of action against them – that they funded Varsity's acquisitions of rival competitors – are time-barred. Further, the Holding Company Defendants rely on the <u>Copperweld</u> doctrine to argue that they are not capable of conspiring with Varsity, as they are legally considered as part of the same enterprise under the Sherman Act.[1]

---

[1] The Holding Company Defendants also "adopt by reference the memorandum of law filed by the Varsity Defendants." (ECF No. 60-1 at PageID 348, n.2 (referencing ECF No. 59-1).) The Court will address those arguments in a separate Order. Here, the Court only addresses the arguments raised by these Defendants in their Motion, which focuses on their liability under §§1 and 2 of the Sherman Act.

In response, Plaintiffs defend their allegations of Charlesbank and Bain's involvement in anticompetitive conduct under the Sherman Act, arguing that (1) their allegations of acquisitions do not violate the applicable statute of limitations because they are continuing violations, and that (2) they adequately allege Charlesbank and Bain's involvement in anticompetitive conduct. Plaintiffs also argue that Copperweld does not bar their claims under the Sherman Act, and, alternatively, that vicarious liability – including successor liability and agency theory – applies here.

As explained below, the Court **DENIES** Defendants' Motion as to its statute of limitations challenge, as well as to its challenges to claims under § 1 and § 2 of the Sherman Act.

## BACKGROUND[2]

Founded by Jeffrey Webb, Varsity[3] was a pioneer in the modern-day cheerleading industry. (ECF No. 1 at PageID 21.) Webb first founded the Universal Cheerleaders Association ("UCA") in 1974, which he distinguished from earlier cheerleading businesses – like the National Cheerleaders Association ("NCA"), his previous employer – with his own "added twists: more focus on gymnastics-like skills and new tournaments created solely for cheer squads." (Id.) By implementing these changes, Webb developed the first cheer competitions and the genre of competitive cheer. (Id.)

At the time of the filing of this Complaint, Varsity "produce[d] over 600 Cheer Competitions in the United States annually in which approximately 900,000 athletes participate each year." (Id. at PageID 19.) The breadth of operations resulted from Varsity's expansive

---

[2] This recitation of facts is based on Plaintiffs' Complaint, (ECF No. 1), assumed to be true for purposes of this Order.

[3] Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Spirit Fashion & Supplies, LLC are collectively referred to by Plaintiffs as "Varsity," which the Court will employ as well.

2

growth over the years. First, in 1983, Webb established Varsity Spirit, Inc. as a company that would "own[] and operate[] UCA." (ECF No. 1 at PageID 21.) Twelve years later, Riddell acquired Varsity Spirit, Inc. and its subsidiaries for $91 million. (Id.) Varsity then became a publicly traded company between 2001 and 2003, before Leonard Green and Partners took the company private in a $131 million deal and changed its name from Varsity Spirit, Inc. to Varsity Brands, Inc. (Id.)

Critical to this litigation, in 2014, Charlesbank, a Boston-based company, acquired Varsity for $1.5 billion. (Id. at PageID 22.) Charlesbank then "converted both Varsity Brands, Inc. and Varsity Spirit, Inc. to limited liability companies owned and controlled by Charlesbank." (Id.) During the period of Charlesbank's ownership, Plaintiffs allege that "Charlesbank conspired with Varsity and Webb to consolidate Varsity's market power by acquiring its biggest rivals." (Id. at PageID 28.) In particular, Varsity acquired "Cheer Limited, one of Varsity's largest rivals," in 2014; acquired JAM Brands, "its largest remaining competitor," and Allgoods, LLC, an apparel company, in 2015; and, in 2016-17, acquired "actual or potential competitors . . . including Aloha Productions, Spirit Celebrations, Mardi Gras Spirit, and Team Epic Brands." (Id. at PageID 23-24.)

Four years after Charlesbank's acquisition, Bain, another Boston-based company, acquired Varsity in an approximately $2.5 billion deal. (ECF No. 1 at PageID 22.) According to Plaintiffs, Bain purchased Varsity "to obtain the benefits of [its] monopoly power" in the proposed markets and "provided funding to enhance, extend, and ensure Varsity Brands' monopoly power." (Id. at PageID 8-9.) Specifically, Plaintiffs allege that Bain participated in the anticompetitive scheme by sitting on Varsity's Board of Directors, funding further acquisitions of rivals, including its acquisition of Epic Brands in January 2018, (see id. at PageID

3

26), and "conspiring with Varsity and Webb" to continue and enhance the monopoly. (Id. at PageID 28.) Even after Bain's acquisition of Varsity, Plaintiffs contend that Charlesbank continued "to be actively involved in the alleged anticompetitive scheme" by sitting on Varsity's Board of Directors. (Id.) Bain owned Varsity at the time that this Complaint was filed. (Id. at PageID 22.)

Plaintiffs allege that all Defendants committed violations of § 1, 2 and 3 of the Sherman Act, and the antitrust and consumer protection laws of thirty-one (31) states, including Tennessee. Based on these allegations, Plaintiffs filed their Class Action Complaint on December 10, 2020. (ECF No. 1.)

The Holding Company Defendants filed a Motion to Dismiss for failure to state a claim on March 12, 2021, arguing that, because a parent corporation cannot be held liable for the acts of its subsidiaries, their dismissal is appropriate. (ECF No. 60.) They also argue that Plaintiffs insufficiently allege conduct specifically engaged in by Charlesbank and Bain that violates the antitrust laws. (Id.) Plaintiffs responded to Defendants' Motion on April 15, 2021, (ECF No. 67), arguing that they sufficiently pled the Holding Company Defendants' active participation and liability for conspiracy and anticompetitive conduct under the Sherman Act. The Holding Company Defendants replied on April 29, 2021. (ECF No. 72.)

For the reasons stated below, the Court **DENIES** Defendants' Motion to Dismiss Plaintiffs' claims. As an initial matter, the statute of limitations does not preclude any claims against these Defendants because Plaintiffs sufficiently allege anticompetitive conduct that constitutes a "continuing violation." As for the conspiracy and monopolization claims under §§ 1 and 2 of the Sherman Act, the Copperweld doctrine requires that Charlesbank and Bain be considered as one enterprise with Varsity. However, Plaintiffs sufficiently allege a conspiracy

4

involving multiple entities: Varsity, viewed as a single enterprise with the Holding Company Defendants, and the separate entity USASF. Likewise, as for the monopolization claim under § 2, which applies to conduct by a single actor, Plaintiffs sufficiently allege that Varsity (and the Holding Company Defendants) advanced an anticompetitive scheme. Plaintiffs also allege Charlesbank and Bain's sufficient participation in the shared enterprise.

## **LEGAL STANDARD**

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To overcome a Rule 12(b)(6) challenge, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. In reviewing the complaint using this standard, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." DirecTV, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). Indeed, a court cannot disbelieve the facts as alleged by plaintiffs. Cupp v. Alberto-Culver USA, Inc., 310 F. Supp. 2d 963, 968-69 (W.D. Tenn. 2004).

However, the complaint "must contain either direct or inferential allegations respecting all the material elements [of the claim] to sustain a recovery under some viable legal theory," see First Am. Title Co. v. Devaugh, 480 F.3d 438, 444 (6th Cir. 2007), and "legal conclusions or unwarranted factual inferences should not be accepted as true." Cupp, 310 F. Supp. 2d at 968–69. Further, "[i]n an antitrust case, 'where the proof is largely in the hands of the alleged conspirators, dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly.'" Michaels Bldg. Co. v. Ameritrust Co., 848 F.2d 674, 681 (6th Cir. 1988) (internal citations omitted) (quoting Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 746 (1976)).

5

# ANALYSIS

Plaintiffs' claims arise under §§ 1, 2, and 3 of the Sherman Act, Tenn. Code Ann. §§ 47-25-101, state antitrust laws, and violations of state consumer protection laws. Rather than challenge each of those provisions here, this Order focuses on whether Plaintiffs have alleged sufficient specific conduct by these Defendants to survive dismissal. At the root of Plaintiffs' alleged violations involving the Holding Company Defendants is the parent-subsidiary relationship between Bain, Charlesbank and their subsidiaries. "A 'subsidiary corporation' is one which is controlled by another corporation by reason of the latter's ownership of at least a majority of the shares of the capital stock." Diamond Chem. Co. v. Atofina Chemicals, Inc., 268 F. Supp. 2d 1, 18 (D.D.C. 2003). Whether Plaintiffs' complaint adequately alleges these causes of action against the Holding Company Defendants is analyzed below. The Court first addresses the threshold issue of whether certain acts alleged in Plaintiffs' Complaint are time-barred.

## I.     Statute of Limitations

The Holding Company Defendants argue that the consideration of any acquisitions that took place before this Complaint's statutory period began in December 2016, or before Charlesbank's purchase of Varsity in 2014, is time-barred by the Sherman Act's four-year statute of limitations. (ECF No. 60-1 at PageID 351-52.) Moreover, according to these Defendants, after excluding the time-barred acquisitions, Plaintiffs' remaining allegations against Charlesbank and Bain are insufficient. Plaintiffs respond that these Defendants participated in the anticompetitive scheme during periods within the statute of limitations, and, because the scheme is a continuing violation, overt acts can occur before the statutory period. (ECF No. 67 at PageID 408.)

Claims[4] brought under the Sherman Act are subject to a four-year statute of limitations beginning on the date that "the cause of action accrued." See 15 U.S.C. § 15b. "A cause of action accrues and the limitations period commences each time a defendant commits an act which injures the plaintiff's business." Peck v. Gen. Motors Corp., 894 F.2d 844, 848 (6th Cir. 1990) (quoting Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338 (1971)). However, just because a cause of action began outside the limitations period does not per se doom the claim. Parties may allege a "continuing antitrust" violation – that is, when a party's interests "are repeatedly invaded." Peck, 894 F.2d at 849. Continuing violations are treated differently between conspiracy and monopolization claims, both of which Plaintiffs allege.

"The focus on conspiracy cases for a continuing violations offense makes intuitive sense." Z Techs. Corp. v. Lubrizol Corp., 753 F.3d 594, 599 (6th Cir. 2014). "[I]n the context of a continuing conspiracy, the statute of limitations runs from the commission of the act that causes the plaintiff's damage." Id. at 598 (quoting Chiropractic Coop. Ass'n of Mich. v. American Med. Ass'n, 867 F.2d 270, 275 (6th Cir. 1989)). An overt act restarts the statutory period for continuing violations. Peck, 894 F.2d at 849. In the Sixth Circuit, an overt act is defined as (1) "a new and independent act that is not merely a reaffirmation of a previous act," and (2) an act that "inflict[s] a new and accumulating injury on the plaintiff." Z Techs. Corp., 753 F.3d at 600.

---

[4] Historically, equitable relief – a portion of what Plaintiffs allege under the Sherman Act – is not controlled by statutes of limitations. See States v. Am. Elec. Power Serv. Corp., 137 F.Supp.2d 1060, 1067-68 (S.D. Ohio 2001) (citing Hommberg v. Armbrecht, 327 U.S. 392, 396 (1946) (". . . statute of limitations historically do not control measures of equitable relief.")). However, when there are concurrent legal and equitable remedies sought, "equity will withhold its relief [] where the applicable statute of limitations would bar the concurrent legal remedy." Sierra Club v. Dayton Power & Light, Inc., No. 2:04cv905, 2005 WL 1972549, at *4 (S.D. Ohio Aug. 12, 2005). Thus, to the extent Plaintiffs seek equitable relief for claims otherwise barred by the statute of limitations, the equitable claims are also barred by the concurrent remedy doctrine.

The application of a continuing violation in the context of a monopolization claim is much narrower, but still permissible. For instance, the doctrine bars consideration of "price increases in the merger-acquisition context" in a monopolization claim when the only allegations focus on acquisitions and mergers. Id. at 598-99 ("None of the cited cases indicate that a price increase following a merger or acquisition, by itself, extends the statute of limitations.") (emphasis added). However, the continuing violation doctrine may apply "where a party . . . undertook action, in addition to price increases, to monopolize a market." Id. at 598. For instance, courts have held that a purchaser suing a monopolist for injuries resulting from overcharges that were paid within the previous four years could still "point[] to anticompetitive actions taken before the limitations period." Meijer, Inc. v. 3M, No. 04-5871, 2005 WL 1660188, at *3-4 (E.D. Pa. July 13, 2005).

Plaintiffs' Complaint alleges antitrust violations based not only on acquisitions, but also on various forms of anticompetitive conduct that inflict new and accumulating injuries on them. While Plaintiffs only expressly allege acquisitions as to Charlesbank's activity during the time period between 2014 and 2016, (see ECF No. 1 at PageID 23-25), they allege other activity that, if taken as true as it must at this stage of litigation, could be inferred to have occurred between Charlesbank's purchase of Varsity in 2014 and the start of the statutory period in 2016. This other activity could also be inferred to have taken place after Bain's purchase of Varsity in 2018. For instance, Plaintiffs allege the (undated) existence of exclusive agreements in the form of the Network Agreement and Family Plan, the creation of a restrictive system of bids for admission to Varsity's tournaments, the exclusion of competitor manufacturers at Varsity events, and Varsity's strategy of counter-programming rival competitions to harm its competitors. (See id. at PageID 32-38.) Viewing these allegations as true at this stage of the litigation, the Court can

infer that Charlesbank and Bain's ownership covered a period in which other overt acts of anticompetitive conduct, in addition to acquisitions, allegedly took place.

Thus, the Court **DENIES** Defendants' statute of limitations challenge because Plaintiffs sufficiently allege a continuing violation of other, non-acquisition, anticompetitive conduct supporting its monopolization and conspiracy claims. Discovery may further discern whether Charlesbank and Bain were in fact involved in any activities constituting the alleged anticompetitive activity, but it is appropriate to consider these acts in the context of a continuing violation.

## II.     Parent Corporation Liability under Copperweld

Defendants and Plaintiffs agree that a parent corporation and its wholly owned subsidiary are treated as a single unit for purposes of antitrust liability. Copperweld Corp. v. Indep. Tube Corp., 467 U.S. 752, 771 (1984). But they disagree as to how to apply the doctrine here: the Holding Company Defendants contend that they cannot be held liable for conspiring with Varsity because they are considered a single enterprise, and Plaintiffs contend that, even if the Copperweld doctrine applies, the Holding Company Defendants can still be liable for conspiracy because Plaintiffs allege that these Defendants conspired with Varsity as well as other entities.

Applying Copperweld, the Court finds that the Holding Company Defendants and Varsity are not separate actors capable of unlawfully coming to an agreement under § 1 of the Sherman Act. However, Plaintiffs can pursue their § 1 claims based on their allegations that Varsity (considered as one enterprise with the Holding Company Defendants) and USASF engaged in an unreasonable restraint of trade and conspired together.[5] Similarly, as for § 2 of the Sherman Act, Plaintiffs can also pursue their conspiracy to monopolize and monopolization claims even if

---

[5] These Defendants do not argue that USASF and Varsity are a single entity.

these Defendants and Varsity are considered as a single enterprise. The Court therefore **DENIES** the Motion as to this argument.

### A.  § 1 of Sherman Act

The Holding Company Defendants argue that they cannot have engaged in concerted action to restrain trade in violation of § 1 of the Sherman Act because they are considered a single enterprise with Varsity under this statute. § 1 of the Sherman Act provides that "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States . . is declared to be illegal." 15 U.S.C. § 1. When a plaintiff alleges restraint of trade under § 1, it must contend with the fact that § 1 "applies only to concerted action that restrains trade," whereas § 2 "covers both concerted and independent action." Lenox MacLaren Surgical Corp. v. Medtronic, Inc., 847 F.3d 1221, 1231 (10th Cir. 2017) (emphasis added). Thus, § 1 of the Sherman Act does not reach the unilateral conduct of a corporation. Id.

In Copperweld, 467 U.S. at 768, the Court concluded that activity between a corporation and its wholly owned subsidiary does not violate § 1 because "a parent and its wholly owned subsidiary have a complete unity of interest" and thus cannot be separate actors capable of unlawfully coming to an agreement under § 1. Id. at 771. Just as employees of a firm do not unlawfully coalesce economic power with their firm, see id.; see also Potters Med. Ctr. v. City Hosp. Ass'n, 800 F.2d 568, 573 (6th Cir. 1986), a parent company and wholly-owned subsidiary have already-converged goals and thus their actions "must be viewed as that of a single enterprise" for purposes of § 1 of the Sherman Act. Copperweld, 467 U.S. at 753. Similarly, individual defendants acting on behalf of a corporation cannot generally conspire with their own corporation. First Med Representatives, LLC. v. Futura Med. Corp., 195 F. Supp. 2d 917, 928

(E.D. Mich. 2002) (finding that individual defendants, when acting on behalf of a corporation, cannot have conspired with their own corporation in violation of the antitrust laws). Thus, a claim alleging that a parent corporation engaged in concerted activity solely with its subsidiary – or, in this case, concerted activity between the Holding Company Defendants, Varsity, and Webb – fails under § 1 of the Sherman Act.

However, Plaintiffs' conspiracy claim under § 1 does not simply involve Varsity, the Holding Company Defendants, and Webb; Plaintiffs also allege that Varsity conspired with USASF in violation of § 1 of the Sherman Act during the time in which Bain and Charlesbank held their ownership interests. (See ECF No. 1 at PageID 51.) Thus, to the extent that Plaintiffs' § 1 claims allege conspiracy engaged in by Varsity and USASF, and, assuming arguendo that Varsity engaged with USASF in an exclusionary scheme under § 1 of the Sherman Act, Defendants' Motion is **DENIED**.

### B. § 2 of Sherman Act

Plaintiffs also allege that Defendants violated § 2 of the Sherman Act, which – in contrast to § 1 – "governs conduct by a single actor." Potters, 800 F.2d at 572; see ECF No. 1 at PageID 51 ("Varsity engaged in a continuing Exclusionary scheme . . . with the purpose and effect of acquiring, enhancing, and maintaining monopoly power . . . in violation of the Sherman Act, 15 U.S.C. §2.") Defendants contend that the dismissal of the § 2 claims against them is appropriate because Plaintiffs fail to prove that Bain and Charlesbank independently participated in the enterprise's scheme, and thus cannot be found liable as part of the enterprise. In response, Plaintiffs allege that these Defendants, unified with Varsity, share antitrust liability under § 2 of the Sherman Act. Alternatively, Plaintiffs request leave to amend if their pleadings are insufficient. (ECF No. 67 at PageID 411.)

11

As for Plaintiffs' monopolization claim, Plaintiffs need only allege anticompetitive conduct by a single actor. Potters, 800 F.2d at 572. By alleging Varsity's role in an exclusionary scheme, (see ECF No. 1 at PageID 51), Plaintiffs have sufficiently alleged a claim in which the Holding Company Defendants could be viewed as a shared enterprise with Varsity. (See also ECF No. 67 at PageID 402 (citing ECF No. 1 at ¶¶ 103-112, 116, 121-29).)

On the other hand, a claim under § 2 for conspiracy to monopolize still requires at least two participants. 2 Earl W. Kintner, Federal Antitrust Law, § 9.2 at p. 6, n. 20 (1980); see also Richter Concrete Corp. v. Hilltop Concrete Corp., 691 F.2d 818, 827 (6th Cir. 1982). It follows that the rationale in Copperweld, which considers a parent company and its wholly-owned subsidiaries as a single enterprise, may also apply to "foreclose a claim of conspiracy to monopolize under section 2 of the Sherman Act" if those are the only entities alleged to have conspired. H.R.M., Inc. v. Tele-Commc'ns, Inc., 653 F. Supp. 645, 648 (D. Colo. 1987).

Here, however, the same rationale applied to Plaintiffs' § 1 claims applies to their § 2 claims: Plaintiffs allege a conspiracy that includes a separate entity, USASF. (ECF No. 1 at PageID 4.) Thus, its conspiracy claim survives this Motion to Dismiss.

### C. Independent Participation

While application of Copperweld requires viewing the Holding Company Defendants as a joint enterprise with Varsity, a plaintiff asserting a § 1 or § 2 claim under the Sherman Act must still provide "evidence that each defendant independently participated in the enterprise's scheme, to justify holding that defendant liable as part of the enterprise." Arandell Corp. v. Centerpoint Energy Servs., Inc., 900 F.3d 623, 631 (9th Cir. 2018) (quoting Lenox, 847 F.3d at 1237). This involvement must be more than mere ownership. Cupp v. Alberto-Culver USA, Inc., 310 F. Supp. 2d 963, 973 (W.D. Tenn. 2004) ("The Court declines to presume that a parent

company participates in every decision or action of its subsidiary."). Because the Court finds that Plaintiffs sufficiently alleged independent participation by these Defendants in the shared enterprise, it **DENIES** Defendants' Motion as to this argument.

Defendants contend that Plaintiffs provide no "basis to infer that Charlesbank's 'funding' of . . . acquisitions was any different than any corporate parent's 'funding' of the operations of a subsidiary," nor that financiers can easily be swept into an antitrust claim involving an acquisition.[6] (ECF No. 72 at PageID 550-51.) Instead, Defendants argue that Plaintiffs' allegations of their conduct are solely based on ownership. Additionally, Defendants contend that no anticompetitive acquisitions were alleged in the Complaint after Bain acquired Varsity in 2018.[7] (Id.) Finally, as to the allegation of the Holding Company Defendants' active participation in the scheme through sitting on "Varsity's parent company's board of directors," Defendants urge that "corporate separation would be eviscerated" if that were a sufficient basis to establish Charlesbank and Bain's liability based on Varsity's actions. (Id. at 551.)

In response, Plaintiffs argue that they have adequately alleged that Charlesbank and Bain actively participated in and profited from Defendants' anticompetitive scheme of monopolization. (ECF No. 1 at PageID 4 ("Acting in concert, Defendants Varsity, USASF, Jeff

---

[6] Defendants also argue that both Charlesbank and Bain are holding companies that have "indirectly own[ed] the Varsity Defendants," (ECF No. 60-1 at PageID 348), but this is not found anywhere in Plaintiffs' Complaint, which controls the factual background at this stage. Thus, taking Plaintiffs' allegations as true for purposes of this Order, the Court will consider that Charlesbank "wholly owned Varsity Brands LLC from 2014 to 2018, and that Bain "purchased defendant Varsity Brands, LLC in 2018" and owned it at the time that this lawsuit was filed. (ECF No. 1 at PageID 8.)

[7] In the Complaint, Plaintiffs state that Varsity "continued to acquire . . . competitors in the Cheer Competition Market," including Team Epic Brands, in 2016-17. (ECF No. 1 at PageID 24.) However, Plaintiffs also state that this acquisition was not complete until January 2018. (Id. at PageID 26.) Based on this information, this acquisition could have occurred during the period of Bain's ownership.

13

Webb, Bain, Charlesbank and their co-conspirators conspired to raise, fix and stabilize the prices charged associated with Competitive Cheer . . . by forming a scheme to create an illegal monopoly and to dominate Competitive Cheer in the United States.").) As for Charlesbank, Plaintiffs allege that it has been involved in this scheme since 2014 when it acquired Varsity, and provided the necessary funding for Varsity "to enhance, extend, and ensure [their] monopoly power" as Varsity "acquired [its] biggest rivals." (ECF No. 1 at PageID 9, 28.) Plaintiffs also allege that Charlesbank continued to actively participate in this conduct even after Bain's acquisition of Varsity by sitting on Varsity's Board of Directors. (Id. at PageID 28.) Finally, they assert that Varsity and Charlesbank were both involved in Varsity's leadership when it was "increasing [its] hold on Cheer governing bodies" and "entering into exclusive agreements" with gyms and schools. (ECF No. 67 at PageID 402.)

As for Bain's involvement, Plaintiffs allege that Bain actively participated in the anticompetitive scheme after it acquired its controlling interest in 2018, by providing funding for Varsity to acquire rivals, sitting on the Board of Directors, and "maintaining control of USASF and other rule making bodies" while in its position of power. (Id. at PageID 400.) Plaintiffs' allegations are sufficient to establish that both Holding Company Defendants participated in the exclusionary scheme as part of the enterprise with Varsity, even if they are not alleged to have "participated in each act or transaction." See Esco Corp v. United States, 340 F.2d 1000, 1008 (9th Cir. 1965) ("This does not mean that each defendant . . . must have participated in each act or transaction; nor is proof required 'that each accused knew the identity and function of all his alleged co-conspirators or that all worked together consciously to achieve a desired end.'") (quoting Marino v. United States, 91 F.2d 691 (9th Cir. 1937))).

14

A sole seat on the Board of Directors does not mean that Charlesbank and Bain directed Varsity to take every action, and acquisitions do not per se portend anticompetitive conduct. See, e.g., Fletcher v. Atex, Inc., 68 F.3d 1451, 1460 (2d Cir. 1995) (finding that one person's simultaneous board membership on the boards of a parent and subsidiary entity did not sufficiently indicate that the subsidiary was an instrumentality of the parent). Yet acquisitions may constitute willful anticompetitive conduct where they lead to a monopoly and exclude competition, see United States v. Grinnell Corp., 384 U.S. 563, 576 (1966), and anticompetitive conduct is viewed in the aggregate. See Cont'l Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 699 (1962). Discovery may elucidate further facts as to Bain and Charlesbank's direct participation in the scheme, which will be required at later litigation phases. But, for now, Plaintiffs allege sufficient facts for the Court to plausibly conclude that these Defendants independently participated in the enterprise by playing a role in steering the organization, funding acquisitions, and maintaining and expanding Varsity's market share throughout the years of their ownership.

Thus, as to §§ 1 and 2 of the Sherman Act, Defendants' Motion to Dismiss is **DENIED** because the Court concludes that Plaintiffs allege that Bain and Charlesbank, considered as part of Varsity, conspired with others to violate the Sherman Act and participated in its efforts at monopolization.[8]

## CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Motion as to its statute of

---

[8] Plaintiffs' recovery for Defendants' violations of the Sherman Act – for instance, whether they share liability as an enterprise for violations or can be held separately and individually liable for any individual anticompetitive conduct – is not an issue to be determined at the motion to dismiss stage. Thus, this Order does not consider Plaintiffs' alternative theories for Defendants' liability, including agency liability and successor liability.

limitations challenge, and the Motion to Dismiss Plaintiff's claims under § 1 and § 2 of the Sherman Act.

**IT IS SO ORDERED**, this 1st day of August, 2022.

s/ Sheryl H. Lipman  
SHERYL H. LIPMAN  
UNITED STATES DISTRICT JUDGE